Good morning, Ms. Liss-Riordan. Good morning. Your Honors, Shannon Liss-Riordan for the Plaintiffs. May I reserve two minutes, please, for rebuttal? Yes, you may have it. Thank you. Your Honors, significantly, there has been no record developed yet in this case. The prior panel decision in D. Fiore v. American Airlines, remember, was based on a trial, and it was a trial that primarily concerned Boston. This case concerns a nationally certified class. And, in its recent decision in the Mass Delivery Association case, this Court held that determination of whether or not claims were preempted must be based on a full review of the record. And, in fact, the Court remanded the case to the District Court to complete whatever discovery may be necessary to develop that record. In this case, there was no record developed at all on the impact of the Plaintiff's claims on the prices, routes, or services of American Airlines. And, in fact, American has conceded in this appeal that the charge at issue here was dropped, was easily dropped, and there's no evidence that it had any impact whatsoever. In fact, the charge that we're talking about, frankly, was a drop in the bucket for American Airlines. The sky caps in this case. Help me with that. As a passenger, it seems to me this went to the heart of prices, because I understand under this policy, if I went and checked the bag, or incurred an obligation for bringing the bag, I got hit with a $2 fee added on to my plane ticket price. The Plaintiffs in this case did not challenge the fee. They didn't challenge the service, and we didn't challenge the fee. We simply challenged the way the airline depicted, deceptively depicted this fee so that it looked like a tip for the sky caps. We never said they couldn't charge a fee. We never said they couldn't charge $2 for the fee. We said, you, American, held this out to the customers like this was a tip, so that customers would reasonably believe it was going to the sky caps, but you kept it for yourself. So what you're talking about is the way they set and structured a fee, and failed to advise passengers as to what the fee was not. Right. Affirmatively, we say, made it look like a tip. They held it out as though it was a tip, and in fact, we won that at trial before a jury in the case. I looked through the complaint, and that's what I was having trouble with, exactly what conduct the airline engaged in that you're saying it's liable for, and what I could find is that it set a service charge of $2, and then many passengers thought that that meant it was going to the, but there's no allegation in the complaint that the airline ever told passengers that it was going to your client. The allegation was that it was represented as though it were a tip, and that reasonable passengers would believe it was a tip based on how it was represented. Which paragraph of the complaint says that? And also, your honors, I will remind you, this case was only at the pleading stage. We never even got to discovery. Were there an issue regarding an allegation in the complaint, and that was all? The court could easily have allowed an amendment, but I believe we were pretty clear. Paragraph two says they didn't adequately notify consumers that the charge is not a tip. Correct. What you just told us a minute ago was that they represented to consumers that it was a tip, or that it would go to the SkyCats, and that's, maybe I overlooked it. Yes. Well, if you look at many passengers, paragraph 40, many passengers are not aware that the $2 per bag charge is not a tip for the SkyCats. I think implicit in our facts, and what we tried the entire related De Fiori case based on, was that the airline, the reason that passengers reasonably believed it was a tip was because the airline represented it as such. So, back to this case that we had before, it seems to me it is correct, then, that there is no allegation of any misrepresentation by the airline. Well, it is an allegation of, it is an allegation that they put this charge into place, a charge that reasonable customers believed it was a tip. This is an implied in fact, essentially our unjust enrichment claim is based on an implied in fact theory. Does the complaint state that it had previously been understood as a tip? I believe, and I apologize, I have not looked at the actual complaint for quite a while, and again, if there was not enough detail considered to be a complaint. Because I assume that one possible construction of the complaint would be if it did lay out that it had previously been understood as a tip, then the statement that they did not adequately apprise people, the opposite, you would just say that, therefore, the carry over would be the same understanding that it was a tip and that is how it was a misrepresentation. But could you just explain, putting that aside for a second, could you explain how this, how your theory accords with De Fiori? I mean, let's say you are, you come out okay in exchange with Judge Coyotas, somehow. But under De Fiori, why isn't this just preempted anyway? Why does it matter, particularly how much of a drop in the bucket it was or wasn't, given De Fiori? Okay, well, several reasons. Again, based on mass delivery association, this court has said that there needs to be an actual factual record of that. No, no, no, no, you're far over reading that case, which I authored. So I'm afraid you have to accept my word for it. It's a nice try, but there is no flat rule that all of these claims are fact specific. Sometimes they can be decided on the pleadings. So now that you've made that point, let's move on. Okay, all right, understood, Your Honor. The full review of the record may or may not require factual development. I understand, so De Novo's legal fear, I agree. The point that we're making here is that there's been no record developed, and there was no record developed in De Fiori regarding the impact of these claims on a price, route, or service. Why isn't that bad for you? That's what I'm having trouble with. Because it seems like De Fiori didn't care what the impact was. It said, by its nature, it's a service that's being charged. And so isn't that just as true here? And what am I misreading about De Fiori that leads you to think otherwise? Well, two things. One, I think De Fiori didn't predict mass delivery association, which even given what Judge Lentz just said, I do believe there does need to be an actual impact on prices, routes, and services. It can't be theoretical. In this case, again, we didn't challenge the service. Guy Capp's services continue to challenge the fee. Putting aside mass delivery for a second, but just reading De Fiori on its own, is there anything in De Fiori that suggests that they cared in the least, whether it would have the kind of non-theoretical impact on price? Is there any language you could point to? Because I just didn't see it. Well, OK, a few things. There were some things in De Fiori that seemed to be based on the record in that case. And of course, we don't have a record in this case. In De Fiori, the court said that airlines would not, Congress likely did not mean to exempt airlines from most conventional torts. And in that case, on that record, the panel concluded that the verdict in that case was based on the statutory claim, not on the tort, we claim tortious interference, because we're saying that there was deception involved in this fee. So, De Fiori can be seen to be limited to the record that was developed in that case. We don't have a record here. De Fiori, I believe, didn't focus on, as Mass Delivery Association requires, on the actual impact on prices, routes, and services. Minor changes could have been effected by the airline in order for this fee not to look like tips to passengers. We're not saying that that whole laundry list of points that the De Fiori panel said needed to be changed. Any one of those things could have made a difference. Council, you've run out of time, unless there is another question. That's it. Thank you. Thank you. I'll save for a rebuttal. Good morning, your honors. My name is Mike Powell, and I'm here for American Airlines. There's really no dispute that this court's two opinions in Brown versus United Airlines in 2013 and De Fiori versus American in 2011 foreclosed the claims the skycaps are making in this case. I mean, this is the third run at the same set of facts and the same set of legal principles. But being persistent, counsel, in effect, in the briefs anyway, has asked your honors to essentially overrule this court's opinions in Brown and De Fiori. And the argument in the briefs is that events have happened in 2014 that have called those two opinions into question. The first event that they recite is the Supreme Court's opinion in Ginsburg versus Northwest. And the second event that they described, and I think Judge Lynch is completely correct, is the Massachusetts Transporter Delivery Association versus Coakley opinion from this court in 2014. And to put a fine touch on that one, at page 21 of that opinion, this court wrote, we have previously rejected the contention that empirical evidence is necessary to warrant preemption and allowed courts to look at the logical effect that a particular scheme has on the delivery of services or the setting of rates. If one looks at all the Supreme Court cases, they all use that logical effect test. I mean, there's almost no recitation. Almost all of those cases came up on motions to dismiss. There is no recitation of detailed facts. There are no fact findings on the issue of preemption in the Supreme Court cases. It is a logical effects test, which is exactly what this court did in both the De Fiori and Brown. Let me speak to an issue that counsel did not talk about, but I think it's the principal issue in the brief. And that is their argument that Ginsburg, the Supreme Court's opinion in Ginsburg,  because Ginsburg goes to the question of the mechanism, as this court has described, the mechanism and then the linkage. So Ginsburg is a mechanism question. And there, I mean, the issue in Ginsburg, to start, there were several issues in Ginsburg, but the issue arose from the statement in Wallens, which is one of the foundational Supreme Court cases, that ordinary breach of contract cases are not preempted. But the court went on to say, but that has to be an ordinary breach of contract without amendment or elaboration of the agreement between the parties based on an external state policy or an external state-imposed rule. So what came up in Ginsburg is exactly the test of that phrase. The question in Ginsburg, if you have an implied covenant of good faith and fair dealing in a contract, first you have to have a contract. And then is there an implied covenant of good faith and fair dealing? Is that an external augmentation amendment adding to of the party's consensual agreement? And that's the issue the Supreme Court talked about in Ginsburg. I looked at Ginsburg very carefully. I think I found eight places in Ginsburg where the Supreme Court said that's what we're talking about. Implied covenants, implied into contracts. And of course, we all know what the answer was. If it's something the parties can't change, then it is preempted. If it's something the parties can modify or change, then perhaps it's part of the agreement. And it's not preempted. The plaintiffs want to stretch the dickens out of that and say that the court said that for all common law causes of action, which the court clearly held can be preempted by the ADA, the courts have to make some sort of an analysis of whether the common law cause of action is self-imposed or self-accepted by the parties or whether it is imposed by the authority of the state. We don't think that's in there. I mean, we're talking in Ginsburg about the implied covenant. That's what's in there. That's what they're talking about. You already have a consensual agreement, a contract. The law implies something else into that contract, and that's the focus of the Ginsburg opinion, not all common law causes of action. And so we don't think, first of all, that the Ginsburg case and would suggest that the Ginsburg case did not undercut this court's opinion in Brown or this court's opinion in De Fiori. In fact, the Ginsburg opinion cited this court's case in Brown twice. So I think if it were going to thinking it were undercutting Brown, it would likely not have done that. So that's just not a legitimate argument, it seems to me. Now, the second argument that we make there is that if Ginsburg does require this court to do an analysis of a common law cause of action to determine whether it is implied by force of the rules of the state or implied by the consent of the parties, Brown did that with the two causes of action that we've got right here, tortious interference and unjust enrichment. Brown goes through both of those causes of action very carefully and concludes in both cases that they are imposed by the rule of law, by the power of the state, not by the consent of the parties. Specifically with respect to unjust enrichment, which is where we get most of the writing in the briefs in this case, the Brown court said that unjust enrichment is imposed to seek justice without assent by the parties and even in the face of dissent or in a belt saying we're not doing that by the parties. So it is, and the court concluded it's clearly a rule of law that's imposed by the power of the state. It's a legal rule. It is not a consensual rule. So I don't know where we go from there. It seems to me that this case is controlled by the law of the circuit doctrine, that all of the issues in this case, as Judge Young concluded, had been decided by Brown or De Fiori, and that those two cases control the outcome of this almost, you know, perfectly the same case. So we would ask your honors to affirm on the strength of your court's opinions in Brown and De Fiori, which we think answer all of the questions that were presented below and are preserved in this case. And if you're not. Could you help me with just one thing, which is what is your understanding of what the underlying agreement is that they're saying was interfered with? Is it an agreement between the passenger and the skycap? Or is it an agreement between the airline and the skycap to have paid them a tip? I just don't quite get it. They have two. They go back and forth, your honor. The first implied agreement is between the airlines and the passengers that these $2 fees are tips for the skycaps and that we will turn them over to the skycaps. I see. So the agreement would be the airline promising the passenger that they'll take the money and give it to the skycap. And they contend in the brief that they are a third-party beneficiary of that, which I think is one step too far. Because if that were the case, then they would have a contract claim, which they don't present if they were a true third-party beneficiary of that contract. They also have sort of an implied agreement with the skycaps that we will, you know, see to it that they get paid their tips. And, you know, I don't know where that comes from either, but again, that would be a contract claim that, you know, they don't make and they don't preserve in this appeal. The two causes of action, there's actually a footnote suggesting there are three, but the two causes of action, the common law causes of action, are tortious interference with that first contract. So is that predicated, though, on there being a contract? I think there, it had, it's a, they say prospective contractual relations or advantageous contractual relations. So they, that's a third one. I should have mentioned that. They say they have an advantageous contractual relationship with the passengers, the skycaps did, that we tortiously interfered with. So that's the tortious interference claim. So it's not really a contract. It's a prospective advantageous relationship. So we don't have a true tortious interference with a contract claim. We don't need to decide that. No, I think it's tortious interference with advantageous. How that might come out. Yeah, I think it's tortious. Under Ginsburg. I'm sorry. I think it's tortious interference with contractual, with an advantageous relationship, potential contract. You know, that. I guess what I'm just wondering, because if you had a self-imposed duty and then a tortious interference with it, exactly how Ginsburg applies in that case might be different than the situation where you're saying it's an advantageous relationship. Right. There's no self-imposed duty to begin with, would be your view. I agree. Okay. Thank you very much, Your Honors. We would request that Your Honor affirm the district court. Thank you. Your Honors, if I could just make a few quick points. First, Judge Barron, in response to your question, in DFIORI, there was no record. There was a trial record developed. There's no record developed on the impact of these claims on prices, routes, or services, which is required by Mass Delivery Association, regardless of whether it needs to be empirical or not. Second of all, in the DFIORI case, the DFIORI panel assumed, based again on that factual record, that there was no property theft involved. The court said, well, the signs looked adequate, even though the jury had said otherwise. Again, the plaintiffs here should be able to develop a factual record. The DFIORI panel intimated that property theft would, in fact, escape preemption. And with respect to these Rollins arguments, the Northwest arguments that were just being discussed, what I'm saying is that in Brown, this court assumed that unjust enrichment was based on, must have been based on, state-imposed obligations. So I think the court was thinking about implied-in-law theory. We're talking about implied-in-fact theory, meaning that it is self-imposed, and that is a broadening of the Rollins exemption that came out of Northwest. And we are talking about the relationship between the passengers and the airline. We're saying that the implied contract, and we didn't plead it as an express contract claim, because it wasn't express. It was implied, but it was implied, in fact, between the airline and the passengers, that these fees were tips that were going to go to the SkyCats, and that was breached. And yes, essentially, the SkyCats are third-party beneficiaries, and although we don't have an express contract, we're bringing it as an unjust enrichment implied contract claim, which is allowed under Northwest, which Brown didn't even think about making that distinction, because Northwest hadn't happened yet. And finally, I just want to remind the court. Do you plead that there was a contract? We pled that it was unjust enrichment, and our theory. I know that, but I mean, I guess I just, if you want to say that there's a self-imposed duty, don't you have to plead that there was actually a contract? I believe unjust enrichment allows for implied-in-fact or implied-in-law breaches of contracts. Again, if the court believes in light of these recent developments, we should have pleaded as a separate count of third-party beneficiary contract theory. We should be permitted to amend to do that. The court in O'Connor v. Uber recognized such a theory. Courts in Hawaii, in cases we've cited, have recognized such a theory. In light of these developments, we didn't think we needed to call it a breach of contract claim. In light of Northwest, I still don't think we need to do that, because it's embedded in the unjust enrichment claim, but we're at the pleading stage and should be allowed to amend if that would make the difference. And finally, I just wanted to note for the court, to remind the court, the De Fiori decision, which did not consider an actual impact on prices, routes, or services, it was a, the court itself said it was a difficult decision. The courts below were entirely torn on this question with Judge Young finding no preemption, Judge O'Toole finding preemption, Judge Gertner changing her mind three times. All right. You've gone more than your two minutes, and we don't need lectures like that. All right? Thank you, Your Honors.